**[Cite as *McDougald v. Ohio Dept. of Rehab. & Corr.*, 2020-Ohio-4911.]**

| | |
|---|---|
| JERONE MCDOUGALD | Case No. 2019-00788JD |
| Plaintiff | Judge Patrick M. McGrath<br>Magistrate Robert Van Schoyck |
| v. | <u>ENTRY GRANTING DEFENDANT'S</u><br><u>MOTION FOR SUMMARY JUDGMENT</u> |
| OHIO DEPARTMENT OF<br>REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} On February 18, 2020, defendant filed a motion for summary judgment pursuant to Civ.R. 56(B). On March 6 and 23, 2020, plaintiff filed motions requesting that the motion for summary judgment be refused because he did not receive materials that were requested in discovery; these motions were denied in orders dated, respectively, March 18 and April 6, 2020. Plaintiff has not filed a response to the motion for summary judgment, and the time for doing so, as extended by the Supreme Court of Ohio's *03/27/2020 Administrative Actions*, 2020-Ohio-1166, has now passed.

{¶2} The motion for summary judgment is now before the court for a non-oral hearing pursuant to Civ.R. 56 and L.C.C.R. 4(D). Civ.R. 56(C) states, in part, as follows:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is

adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

*See also Gilbert v. Summit Cty.*, 104 Ohio St.3d 660, 2004-Ohio-7108, 821 N.E.2d 564, ¶ 6, citing *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 364 N.E.2d 267 (1977).

{¶3} Plaintiff, an inmate in the custody and control of defendant, brings this action alleging that on August 13, 2017, he "was OC sprayed at close range with a MK-9 with a deadly amount of OC spray 100+ grams by John Doe Officer[.]"  (Complaint, ¶ 12.)  Plaintiff further alleges that he was subsequently "denied medical treatment."  (Id.)  In the portion of the form complaint for identifying one's injury, damage, or loss, plaintiff lists "shortness of breath, pain and suffering, blistered skin, swelling of the mucus membranes, anxiety as if I would die".  (Complaint, ¶ 13.)  Plaintiff seeks monetary relief under theories of "battery, negligence, excessive force, fraud".  (Complaint, ¶ 12.)

{¶4} "Allegations of use of unnecessary or excessive force against an inmate may state claims for battery and/or negligence."  *Brown v. Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 13AP-804, 2014-Ohio-1810, ¶ 13.  "To prove battery, the plaintiff must prove that the intentional contact by the defendant was harmful or offensive. * * * Ohio courts have held that, in a civil action for assault and battery, the defendant has the burden of proving a defense of justification, such as the exercise of lawful authority."  *Miller v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 12AP-12, 2012-Ohio-3382, ¶ 11.  "A defendant may defeat a battery claim by establishing a privilege or justification defense."  *Brown* at ¶ 13.  "However, 'the use of excessive force by one privileged to use force on another may constitute battery.'"  *Russell v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 19AP-424, 2019-Ohio-4695, ¶ 11, quoting *Shadler v. Double D. Ventures, Inc.*, 6th Dist. Lucas No. L-03-1278, 2004-Ohio-4802, ¶ 19.

{¶5} "To recover on a negligence claim, a plaintiff must prove by a preponderance of the evidence (1) that a defendant owed the plaintiff a duty, (2) that a defendant breached that duty, and (3) that the breach of the duty proximately caused a plaintiff's injury." *Ford v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 05AP-357, 2006-Ohio-2531, ¶ 10. "Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being." *Ensman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. Franklin No. 06AP-592, 2006-Ohio-6788, ¶ 5.

{¶6} "The use of force is sometimes necessary to control inmates." *Jodrey v. Ohio Dept. of Rehab. & Corr.,* 10th Dist. Franklin No. 12AP-477, 2013-Ohio-289, ¶ 17. "Correctional officers considering the use of force must evaluate the need to use force based on the circumstances as known and perceived at the time it is considered." *Brown* at ¶ 15, citing Ohio Adm.Code 5120-9-01(C). "[T]he precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer." *Ensman* at ¶ 23. "In Ohio Adm.Code 5120-9-01, the Ohio Administrative Code sets forth the circumstances under which correctional officers are authorized to use force against an inmate." *Id.* at ¶ 6.

{¶7} Ohio Adm.Code 5120-9-01 provides, in pertinent part:

"(C) Guidelines regarding the use of force. * * *

"* * *

(2) Less-than-deadly force. There are six general circumstances in which a staff member may use force against an inmate or third person. A staff member may use less-than-deadly force against an inmate in the following circumstances:

"(a) Self-defense from physical attack or threat of physical harm.

"(b) Defense of another from physical attack or threat of physical attack.

"(c) When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders.

"(d) When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance.

"(e) Prevention of an escape or apprehension of an escapee; or

"(f) Controlling or subduing an inmate in order to stop or prevent self-inflicted harm."

{¶8} "Pursuant to Ohio Adm.Code 5120-9-01(C)(1)(a), correctional officers 'may use force only to the extent deemed necessary to control the situation.'" *Brown* at ¶ 16. "Additionally, correctional officers 'should attempt to use only the amount of force reasonably necessary under the circumstances to control the situation and shall attempt to minimize physical injury.'" *Id.*, quoting Ohio Adm.Code 5120-9-01(C)(1)(b). "'Excessive force' means 'an application of force which, either by the type of force employed, or the extent to which such force is employed, exceeds that force which reasonably appears to be necessary under all the circumstances surrounding the incident.'" *Russell*, 2019-Ohio-4695, at ¶ 14, quoting Ohio Adm.Code 5120-9-01(B)(3).

{¶9} In support of its motion for summary judgment, defendant submitted the affidavit of Lieutenant Jeremy Eaches, who avers the following:

1.    I am employed by Defendant, Ohio Department of Rehabilitation and Correction ("DRC"), for approximately 13 years. On August 13, 2017, I was, and currently, employed [sic] as a Lieutenant at the Southern Ohio Correctional Facility ("SOCF") in Lucasville, Ohio.

2.    I have personal knowledge as to the litigation commenced by inmate Jerome McDougald, which is pending before the Ohio Court of Claims. I am competent to testify to the facts contained in this affidavit.

3.    Inmate Jerome McDougald (#548-527), on August 13, 2017, refused to cuff up and move cells, so a five-man team was assembled to extract him. However, prior to the team's arrival,

McDougald complied and was successfully handcuffed and placed in leg restraints for his escort. He was also provided a spit mask because he had previously spit at and on staff members. During the escort, McDougald—despite numerous directives to walk—refused to walk and became deadweight at times. Upon arrival on the second floor, as is common practice, McDougald was placed in a strip cage allowing the officers to conduct a search of his person prior to being transferred to a new unit.

4. In order to perform the search, the officers removed McDougald's restraints and his spit mask. Without these mechanisms, the strip cage does not prevent inmates from striking or spitting at officers. Officer Tabor requested McDougald to open his mouth for inspection. McDougald then spit at Officer Tabor. Reactively, I deployed OC spray toward inmate McDougald. I was equipped with a fogger, a larger device than the small OC streamer, as the spray casts a wider cone ensuring the effectiveness of the chemical. Because of the wider cone, the same short burst would utilize more OC than the smaller OC streamer. The distinction is similar to a garden hose, where the jet-mode is the OC streamer and the cone-mode is the OC fogger. Given my experience and training, both are reasonable and standard methods given the situation. Here, the fogger was effective. McDougald attempted to duck out of the way, but immediately placed his hands out of the hatch to be handcuffed. No other force was used.

5. The officers completed the search, and escorted McDougald to his new cell while placing him leg restraints [sic] and a spit mask.

McDougald was seen by medical personnel and provided an opportunity for decontamination.

6.       As part of the incident, I created an incident report.  Attachment A-1 is a true and accurate copy of my August 13, 2017, incident report regarding the incident, which was created and maintained in the normal course of business.  My incident report contains my true and accurate description of the events that occurred during the incident.

{¶10} Based upon the uncontroverted affidavit testimony from Lieutenant Eaches, plaintiff cannot prevail on his claim that excessive force was used against him. Reasonable minds can only conclude that plaintiff initially refused directives to cuff up so that officers could escort him to another housing unit, that plaintiff agreed to do so only after a team of officers was assembled to forcibly extract him from the cell, that while being escorted he repeatedly refused to walk and became deadweight in contravention of officers' directives, and that when Corrections Officer Tabor attempted to conduct a routine search of plaintiff's person before entering the new housing unit and asked plaintiff to open his mouth for a look inside, plaintiff—whose restraints had been removed—instead spit on Tabor.

{¶11} It can only be concluded that, under the circumstances, Lieutenant Eaches had the lawful authority and privilege to use such force as may have reasonably appeared necessary under the circumstances to control or subdue plaintiff following his refusal to obey directives, specifically his refusal to allow Corrections Officer Tabor to look inside his mouth, and to defend Corrections Officer Tabor.  It must also be concluded that the degree of force used by Lieutenant Eaches was justified and privileged, and satisfied the duty of reasonable care.

{¶12} Regarding plaintiff's allegation of being denied medical attention, Lieutenant Eaches' affidavit establishes that plaintiff was seen by medical personnel

and provided an opportunity for decontamination following the incident. Additionally, the Incident Report identified by Lieutenant Eaches in his affidavit states that plaintiff "was checked by medical and mental health" following the incident. Accordingly, reasonable minds can only conclude that plaintiff cannot prove his claim of being denied medical attention.

{¶13} Finally, to the extent that plaintiff raises fraud as a theory of relief in the complaint, "[t]he elements of a fraud claim are: (1) a representation (or concealment of a fact when there is a duty to disclose); (2) that is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with intent to mislead another into relying upon it; (5) justifiable reliance; and (6) resulting injury proximately caused by the reliance." *Dunlop v. Ohio Dept. of Job & Family Servs.*, 10th Dist. Franklin No. 11AP-929, 2012-Ohio-1378, ¶ 19. From the undisputed facts set out in the affidavit of Lieutenant Eaches, there can be no dispute that plaintiff cannot establish the elements necessary to sustain a claim of fraud.

{¶14} Based upon the foregoing, the court concludes that there are no genuine issues of material fact and that defendant is entitled to judgment as a matter of law. As a result, defendant's motion for summary judgment is GRANTED and judgment is hereby rendered in favor of defendant. All previously scheduled events are VACATED. Court costs are assessed against plaintiff. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

PATRICK M. MCGRATH
Judge

Filed September 16, 2020
Sent to S.C. Reporter 10/15/20